In the Matter of the Application of LESLIE D. BEGENT, d/b/a BEGEACRES FARM, Petitioner, for an Order under Article 78 of the Civil Practice Act against HOLTON V. NOYES, Commissioner of Agriculture and Markets of the State of New York, Respondent.

Third Department, July 2, 1940.

*Henry S. Manley,* for the petitioner.

*Milo R. Kniffen, Counsel to the Department of Agriculture and Markets,* and attorney [*Robert G. Blabey, Assistant Counsel,* of counsel], for the respondent.

HILL, P. J.   The petitioner, the owner of a farm and dairy near the city of Ithaca, N. Y., has been licensed by the Commissioner of Agriculture and Markets to sell milk at wholesale and retail in the city of Ithaca.   This proceeding is brought to review, under article 78 of the Civil Practice Act, the decision of the Commissioner refusing to modify the limitations contained in the license, which bears date August 30, 1939.   The limitation requires that the licensee not sell milk other than that which is produced by her own herd " and by herds of the two producers from whom licensee has been receiving milk in the past " (E. S. Savage and E. J. Barrett).   Also, petitioner is required to " refrain from selling or offering to sell milk at prices which will tend to cause customers of other dealers to change to the licensee for their supply of milk."   Petitioner applied for the original license on March 11, 1939.   Various hearings were held and it is alleged in her petition and admitted in the answer, " after the hearing and until June 21, petitioner tried by letters and long distance telephone calls, from Mr. Begent to Mr. Fee, to get a determination upon her application.   She received a letter from Mr. Fee dated June 14, stating that a license would be issued upon certain conditions, notably the payment of $125 as license fees for the past five years."   The petition further alleges in paragraph thirty-three that she has sold milk in increasing quantities and needs additional sources, and further, " On January 4, 1940, and on previous occasions, she asked to be relieved from the limitations or conditions attached to the license, and on the latter date she applied for hearing upon that application.   The date of hearing fixed originally was January 19, 1940, but it was adjourned by the Department to February  2, upon request of opposing dealers,

for their convenience." The answer denies knowledge or information sufficient to form a belief as to these allegations, " except respondent admits that petitioner requested relief from the limitations and conditions of her license and applied for a hearing which was subsequently held on February 2, 1940."

The modification of the restrictions was sought to permit applicant to purchase milk from a dairy of eighty pure bred Guernsey cows owned by Bertrand L. Buck who, until just prior to October 1, 1939, for ten years had sold his milk to W. A. Luce, one of the objectors, who is a dealer selling milk in the city of Ithaca. Luce had taken the milk at the Buck farm and there had been no charge for transportation. The parties disagreed when Buck was required to pay twenty-three and one-half cents a hundred for hauling. He testifies that he was willing personally to deliver the milk to the Luce plant. The Buck milk has been sold in the city of Ithaca to consumers for twenty years, about ten years through Luce and previously Buck conducted his own route. Since October 1, 1939, he has had no market for his milk, and necessarily has separated the cream and sent it to a distant city market.

The Commissioner finds authority for the limitation on petitioner's license and his refusal to modify it in section 258-c of the Agriculture and Markets Law. " The Commissioner may grant or renew a license or may decline to suspend or revoke a license conditionally, or upon the agreement of the licensee or applicant to do or omit to do any definite act, but such condition and/or agreement must have some appropriate relation to the administration of this article." The decision by the Commissioner consists of the " conclusion " and twenty numbered paragraphs designated findings of fact. These deal with the disagreement between Buck and Luce and with the fact that the petitioner sells Guernsey milk wholesale at eleven cents a quart, that being the price obtained by other dealers for standard Grade A milk. The " conclusion " recites: " The·license was limited for the purpose of preventing, if possible, a demoralization of the milk market in Ithaca. The licensee has failed to adhere to the limitations contained in such license. She has built up a sizable business in a very short time. In so doing, she has had the active cooperation of one of the producers from whom she buys milk, and who is also a well-known professor in the State College of Agriculture. The licensee now seeks to expand the business by handling the milk produced by still another herd that is producing more milk than is produced by the licensee * * *. The milk of this herd was sold to an Ithaca dealer until a few months ago. That dealer re-sold it at 12¢ per quart wholesale. It is not now being sold in Ithaca.

The licensee proposes to bring it back into the Ithaca market, where the licensee is selling similar milk at 11¢ per quart wholesale. * * * It is my opinion that the granting of the license is not in the public interest, and that it would be contrary to the spirit and intent of the statute."

The Commissioner's conclusion of destructive competition is not borne out by the evidence. Buck formerly was delivering 360 quarts (nine cans) to Luce. Buck is now denied a market because he will not submit to what he regards as an exorbitant charge for transportation. His milk has been sold in Ithaca for twenty years. Luce testifies that he has lost milk business since petitioner began to sell to the extent of about 130 quarts. This is a little more than one-third of Buck's milk which he formerly received and which he sold under the name " Crystal Pond " established by Buck. The aggregate loss of business testified to by other dealers is comparatively trivial. The brief presented by the Commissioner argues that the limitation is fair for the reason detailed. " Furthermore, it was not an unfair limitation because there is nothing in it which prevents the petitioner or the other two producers from increasing their production to any limit. Indeed, one of them, E. S. Savage, offered that information during the course of his testimony at the hearing." The testimony referred to follows: " Q. A short time ago you said that you and the other producers selling to Mr. Begent were held down in your production. What did you mean by that? Has anyone curtailed your production by telling you that you can only produce so much milk and no more? A. No, but I have had considerable conversation with Mr. Noyes on that. Q. There is no restricting order stating that you can only produce so much milk on your farm? A. He has not told me that definitely, but he has told me if there was less in volume it might have something to do with this license. Instead of buying Mr. Buck's milk, supposing I leased Mr. Buck's farm and took that milk in my supply so that it goes into Begent's volume? Q. Have you contemplated that? A. Something like that. Q. Then it was not your intention of increasing your production only your own farm when you said your production had been curtailed. There is nothing to prevent you from putting on ten or fifteen more cows on your farm if your farm will carry them? (No answer.) " Thus it seems that petitioner may market the increased amount of milk represented by Buck's dairy, but that it may not be purchased from Buck. It is difficult to understand the process of reasoning by which the conclusion is reached that petitioner will demoralize the Ithaca milk market if she is permitted to buy the additional milk from

Buck, but that there will be no destructive competition if she buys like additional amount produced by Professor Savage through increase of his own dairy or possibly if she leased Buck's farm and dairy. Petitioner should not be required to resort to the recommended subterfuge, nor should Buck be thus proscribed.

The determination is arbitrary and capricious and should be annulled.

HEFFERNAN and FOSTER, JJ., concur; CRAPSER and SCHENCK, JJ., dissent, and vote to confirm.

Determination annulled on the law and facts, with fifty dollars costs and disbursements.

The court reverses findings of fact made by the Commissioner of Agriculture and Markets numbered 7, 8, 10, 12, 13, 15, 16 and 20.